# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| **DARRYL DERAMUS** | **CIVIL ACTION NO. 21-2566** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **CLAIBORNE PARISH DETENTION CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Darryl Deramus, a pre-trial detainee at Claiborne Parish Detention Center ("CPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately August 12, 2021, under 42 U.S.C. § 1983. He names the following defendants in their individual and official capacities: CPDC, Sheriff Sam Dowies, Warden Dusty Williams, Lieutenant Bobby Morgan, and Lieutenant Shanti Glass.[1] [doc. # 1, p. 9].

For reasons below, the Court should retain: (1) Plaintiff's Religious Land Use and Institutionalized Persons Act claim against Sheriff Dowies in his official capacity; (2) Plaintiff's claim that Lieutenant Morgan retaliated by placing him in administrative segregation after Plaintiff refused to submit to a haircut; and (3) Plaintiff's conditions-of-confinement claim against Defendants Williams and Morgan. The Court should dismiss the remaining claims, including:

(1) Plaintiff's claim that defendants forced him to submit to a haircut in violation of his First Amendment right to practice his religion;

(2) Plaintiff's claim under the Religious Freedom Restoration Act;

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

(3) Plaintiff's Religious Land Use and Institutionalized Persons Act claims against Defendants William and Morgan in their official capacities and against all defendants in their individual capacities;

(4) Plaintiff's retaliation claims: (A) that Warden Williams denied him access to the law library; (B) that Lieutenant Morgan forced Plaintiff to cut his hair; (C) that the administration is holding, copying, and opening his legal mail in his absence; and (D) that "legal material" is "possibly going missing[,]" that his mail is "being held longer than it should or longer than other detainees," and that mail he sent to his family "went missing";

(5) Plaintiff's claims against CPDC;

(6) Plaintiff's claim that Warden Williams failed to stop Lieutenant Morgan from cutting his hair and placing him in administrative segregation;

(7) Plaintiff's access-to-court claims;

(8) Plaintiff's claim that property he mailed never arrived at its destination;

(9) Plaintiff's claim that Lieutenant Glass opened, copied, and destroyed his legal mail in his absence; and

(10) Plaintiff's claims that Sheriff Dowies: (A) did not issue him boxer shorts, socks, a t-shirt, and shower shoes when Plaintiff entered CPDC; (B) "has not provided staff with proper safety training to ensure a safe environment"; (C) failed to enact "adequate rules or guidelines for staff or inmates to follow"; and (D) "has not ensured the well-being of inmates or staff due to the fact of overcrowding and being understaffed."

## **Background**

Plaintiff is a "Rastafarian Muslim" and maintains that cutting his hair violates his religious beliefs, his constitutional rights, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.,* and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq.* [doc. #s 1, p. 13; 8, p. 2]. He alleges that when he arrived at CPDC on October 21, 2020, Lieutenant Morgan informed him that he must cut his hair because it "was too long and against the policy of the jail." [doc. # 1, p. 13]. Plaintiff "stated [his] religious faith and beliefs as a Rastafarian Muslim" and made Morgan "aware of the burden

on [his] religious and cultural exercise. [sic]." [doc. # 8, p. 2]. He claims that when he refused to cut his hair, Morgan instructed another correctional officer to place him in administrative segregation. [doc. # 1, p. 13]. Plaintiff faults Sheriff Dowies for "making a policy that all inmates must keep short hair . . . ." *Id.* at 17.

Plaintiff remained in administrative segregation from October 21, 2020, to November 19, 2020, when he was forced to cut his hair. [doc. #s 1, p. 13; 8, p. 2]. He suffered emotional distress from being in segregation and from being forced to cut his hair. [doc. # 8, p. 2]. He faults Warden Williams for failing to stop Lieutenant Morgan from placing him in administrative segregation and cutting his hair. [doc. #s 1, p. 17; 8, p. 2].

Plaintiff claims that in administrative segregation he could not use a telephone to call family and friends. [doc. #s 1, p. 13; 8, p. 2]. He also lacked stationery, an envelope to use to write to his family, hygiene items, a toothbrush, toothpaste, soap, and materials to clean his cell and toilet. *Id.* He could not shower because he lacked hygiene items and a change of clean clothes. [doc. # 8, pp. 2-3]. He "was forced to wear soiled and dirty clothes during [his] stay." *Id.*

Plaintiff claims that when he arrived at CPDC, Sheriff Dowies and Warden Williams failed to ensure that he received "clothing such as underwear, t-shirts, socks, [or] shower shoes . . . ." [doc. # 1, pp. 14, 17]. He needs "these items so he can have some clothes to put on while he send[s] dirty and soiled clothes to the laundry to be washed." *Id.*

Plaintiff claims that Warden Williams denied him access to the law library. *Id.* at 7. He "filled out numerous request forms requesting access to a law library[,]" but his requests were never answered. *Id.* at 14. He could not research how to file "in the federal courts" and could not "study for [his] criminal case and civil case . . . ." [doc. #s 1, p. 14; 8, p. 2]. In June 2021,

Warden Williams informed detainees that they had no right to use the law library because they are "appointed a lawyer through the Indigent Defenders Board." *Id.*

Plaintiff claims that Warden Williams retaliated against him "for complaining about living conditions." *Id.* at 14. He also claims that his placement in administrative segregation and being forced to cut his hair constituted retaliation. [doc. # 8, p. 2].

Plaintiff claims that he attempted to mail his personal property from the jail to his home at his expense, but, although he paid for postage and was told that the property was mailed, it never arrived at its destination. [doc. #s 1, pp. 14-15; 8, p. 4].

Plaintiff claims that Lieutenant Glass opened and copied his legal mail in his absence. *Id.* at 7, 16. He claims that his mail is "held longer than it should or longer than other detainees." [doc. # 8, p. 4]. He "believe[s] this is all in retaliation of the civil suit [he] filed because no one else is receiving this treatment . . . ." *Id.*

Plaintiff faults Sheriff Dowies because he is allegedly the "'keeper of the public jail'" and is "responsible for mak[ing] policies, rules for the public jail in his parish." [doc. #s 1, p. 14; 8, p. 4]. He claims that Dowies "has not provided staff with proper safety training to ensure a safe environment . . . ." [doc. # 8, p. 4]. "There are no adequate rules or guidelines for staff or inmates to follow." *Id.*

Plaintiff seeks a declaratory judgment, injunctive relief, nominal and punitive damages, and any other relief to which he is entitled. *Id.* at 18-19.

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is

subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2]  *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*. A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. First Amendment**

Plaintiff claims that defendants forced him to submit to a haircut in violation of his First Amendment right to practice his religion.  The Court must evaluate whether the regulation or practice "is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  In *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995), the Fifth Circuit opined:

> The rule is well established that inmates retain their First Amendment right to exercise religion; however, this right is subject to reasonable restrictions and limitations necessitated by penological goals.  Equally clear in this circuit is the proposition that prison grooming regulations, including specifically the requirement that a prisoner cut his hair and beard, are rationally related to the achievement of valid penological goals, such as security and inmate identification.

Holding that the plaintiff "failed to identify an arguable basis in law for his free exercise claim" and that the claim was "based on an indisputably meritless legal theory[,]" the Fifth Circuit affirmed the district court's dismissal of the plaintiff's claim.  *Id.*; *see also Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 82 (1992) (holding that prison policy requiring short hair did not violate Rastafarian prisoners' rights to freely exercise their religion while incarcerated); *Taylor v. Johnson*, 257 F.3d 470, 472-73 (5th Cir. 2001) (holding that prison grooming policy prohibiting a Muslim inmate from growing a one-quarter inch beard did not violate his Free Exercise rights).

Here, accordingly, the Court should dismiss Plaintiff's First Amendment claim.

**3. Religious Freedom Restoration Act**

Plaintiff seeks relief under the RFRA.  However, the RFRA does not apply to "states and their subdivisions." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 289 (5th Cir. 2012).  As Plaintiff does not name any federal actors as defendants, the Court should dismiss his RFRA claims.

**4. Religious Land Use and Institutionalized Persons Act**

Plaintiff seeks relief under the RLUIPA.  He also states that all "defendants are sued in their individual and official capacities."  [doc. # 1, p. 9].

The RLUIPA, however, "does not create a cause of action against defendants in their individual capacities."  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011); *see Fluker v. King*, 679 F. App'x 325, 328 (5th Cir. 2017).  Thus, the Court should dismiss Plaintiff's RLUIPA claims against defendants in their individual capacities.

Moreover, Plaintiff's official capacity claims against Defendants Williams and Morgan duplicate his official capacity claim against Sheriff Sam Dowies.[3]  "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]"  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  In Louisiana, "the sheriff is a virtually autonomous local government official[.]"  *Burge v. Par. of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999).

Plaintiff alleges that Sheriff Dowies made the policy requiring inmates to "keep short hair."  [doc. # 1, p. 17].  Moreover, he alleges that Dowies "is the keeper of the public jail of his parish . . . ."  [doc. # 8, p. 4].  Accordingly, the Court should dismiss Plaintiff's redundant RLUIPA claims against Defendants William and Morgan in their official capacities.  *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves.").

---

[3] Plaintiff does not allege that Defendant Glass violated the RLUIPA.

Finally, the Court should retain Plaintiff's RLUIPA claim against Sheriff Dowies in his official capacity. *See Ware v. Louisiana Dep't of Corr.*, 866 F.3d 263 (5th Cir. 2017) (grooming policy prohibiting prisoners housed in Louisiana Department of Corrections prisons from having dreadlocks was not least restrictive means of achieving Department's asserted compelling interest, as required by RLUIPA).

## 5. Retaliation

To prevail on a retaliation claim, a plaintiff must prove: (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998). Courts must "carefully scrutinize" retaliation claims to "assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).[4]

A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995). "Mere conclusory allegations of retaliation are insufficient[,] . . . a plaintiff must allege more than his personal belief that he has been the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). With respect to the third prong above, "[r]etaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013).

---

[4] "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Id.* (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

Here, Plaintiff first claims that Warden Williams retaliated against Plaintiff and others because they complained "about living conditions." [doc. # 1, p. 14]. He suggests that Williams retaliated by denying him access to the law library. *Id.* His claim, however, is conclusory: he does not explain how, when, where, or to whom he complained about the living conditions. Nor does he specify which conditions to which he refers.[5] Further, he lacks standing to seek relief on behalf of other detainees. The Court should dismiss these claims.

Next, Plaintiff claims that Lieutenant Morgan retaliated by forcing him to cut his hair. [doc. # 8, p. 2]. Critically, though, Plaintiff also maintains that the policy at the facility—enacted by Sheriff Dowies—was "that all inmates must keep short hair . . . ." [doc. # 1, p. 17]. He states that Morgan told him that he "would have to cut" his hair *because* it was "against the policy of the jail." *Id.* at 13.

Plaintiff does not plausibly allege that but for any retaliatory motive Morgan would not have forced him to cut his hair because Plaintiff told Morgan that he was a Rastafarian Muslim *after* Morgan told Plaintiff that he must cut his hair. *See Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 319 (5th Cir. 2021), *cert. denied,* 2021 WL 5043659 (U.S. Nov. 1, 2021) (finding that retaliation could not be plausibly inferred where the plaintiff exercised a constitutional right only after the alleged retaliation). While Plaintiff did submit to a haircut later, his allegations indicate that he was only submitting to Morgan's prior order. *Id.* (finding that while the plaintiff was taken to isolation after his "protected speech occurred[,]" he was ordered to isolation before his speech "and that order was simply carried out" after the plaintiff's

---

[5] *See Jones v. Hosemann*, 2020 WL 3250038, at *4 (5th Cir. June 15, 2020) ("[A]ll Jones alleges is that the individual defendants acted with 'pretext' and 'in retaliation' Those are purely legal conclusions. Jones does not add 'factual content'" to these allegations.").

speech).

Similarly, Morgan would have instructed him to cut his hair regardless of any retaliatory motive because, according to Plaintiff, Morgan told him that he must cut his hair under the jail's policy. [doc. # 1, p. 13]. In *Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019), the plaintiff alleged that a nurse "rendered perfunctory and nonspecific treatment." However, the nurse's "acts were dictated by the prison's restrictive protocol[.]" Thus, the court found that the plaintiff failed to prove the nurse's "acts were driven by a retaliatory motive, as opposed to the prison protocol covering such situations."[6] Here, Plaintiff does not allege, for instance, that the policy did not apply to him, that Morgan only applied the policy to him, or that Morgan otherwise applied the policy selectively. In fact, Plaintiff states that Sheriff Dowies made a "policy that *all inmates* must keep short hair . . . ." *Id.* at 17 (emphasis added). Plaintiff also states that the conditions at the jail apply to "every inmate . . . ." *Id.* at 7. The Court should dismiss this claim.

Plaintiff next claims that Lieutenant Morgan retaliated by placing him in administrative segregation after Plaintiff refused to submit to a haircut. [doc. # 8, p. 2]. When Plaintiff refused to cut his hair, Morgan allegedly stated, "Don't worry I got something for you." [doc. # 1, p. 13]. The Court should retain this retaliation claim against Morgan.

Next, Plaintiff claims that "the administration" holds, copies, and opens his legal mail in his absence. [doc. # 8, p. 3]. Plaintiff, however, does not identify a responsible defendant.

---

[6] *See Walker v. Scherbarth*, 676 F. App'x 815, 820 (10th Cir. 2017) ("[I]n light of prison policy that gives Mr. Walker no right in his previous assignment as an OCA in Limon, . . . it is clear that his placement in RP would have taken place regardless of any retaliatory motive on the part of the defendants."); *Dippolito v. United States*, 704 F. App'x 199, 203 (3d Cir. 2017) (affirming the district court's conclusion that the plaintiff could not "show that there was a causal link between his grievances and the bottom-bunk denial because Fort Dix had a policy that limited bottom bunks . . . .").

Further, these actions do not reflect greater-than-de minimis acts which would deter a person of ordinary firmness from further exercising his constitutional rights.[7]

Finally, Plaintiff alleges that "legal material" is "possibly going missing[,]" that his mail is "being held longer than it should or longer than other detainees," and that mail he sent to his family "went missing[.]" [doc. # 8, pp. 3-4]. Plaintiff "believe[s] this is all in retaliation of the civil suit [he] filed because no one else is receiving this treatment with the missing or holding of mail." *Id.* at 4. First, however, this allegation is conclusory: Plaintiff must allege more than his personal belief that he has been the victim of retaliation. *See Jones*, 188 F.3d at 325. Second, Plaintiff does not identify a responsible defendant. Rather, he speaks only in the passive voice, alleging that his mail is "going missing[,]" "is being held[,]" and "went missing[.]" *Id.* at 4. While he does suggest that Defendant Glass is responsible for opening and copying his mail in his absence, he does not definitively fault Glass for the alleged retaliatory actions: his missing outgoing mail[8] and his delayed incoming mail. Third, like the claim above, the alleged retaliatory actions are de minimis. *See supra* note 7. The Court should dismiss these claims.

## 6. Claiborne Parish Detention Center

Plaintiff names CPDC as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is

---

[7] *See Sanchez v. Calfee*, 558 F. App'x 428, 429 (5th Cir. 2014) (finding that denial of mail was de minimis); *Street v. Johnson*, 2009 WL 2407750, at *4 (N.D. Miss. Aug. 3, 2009) (finding that reading a prisoner's "legal papers" was de minimis because "no discipline was imposed or sought[,]" the plaintiff did not suffer "an adverse change to his conditions of custody[,]" and the seizure did not prejudice the plaintiff); *Jebril v. Joslin*, 2008 WL 2491658, at *3 (S.D. Tex. June 18, 2008) (finding that without more, repeatedly interfering with an inmate's mail "does not establish greater than *de minimis* retaliation.").

[8] While not dispositive, Plaintiff alleges that Glass is "in charge of handling *incoming* legal mail." [doc. # 1, p. 9 (emphasis added)].

located . . . ."  Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership."  LA. CIV. CODE art. 24.  CPDC does not qualify as a juridical person.  Accordingly, the Court should dismiss Plaintiff's claims against CPDC.

**7. Supervisory Liability for Warden Williams**

Plaintiff cursorily faults Warden Williams for failing to stop Lieutenant Morgan from placing him in administrative segregation and cutting his hair.  [doc. #s 1, p. 17; 8, p. 2].

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries."  *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).  "Vicarious liability does not apply to § 1983 claims."  *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).  "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'"  *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Plaintiff does not plausibly allege that Warden Williams affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between Williams's conduct and any alleged constitutional violation.[9]  Instead, Plaintiff pleads

---

[9] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

only vicarious liability. *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . .").

Plaintiff also does not allege that Williams implemented an unconstitutional policy, practice, custom, or procedure. Accordingly, the Court should dismiss these claims against Williams.

## 8. Conditions of Confinement

Plaintiff complains of the conditions of his confinement in administrative segregation. Plaintiff is a pre-trial detainee. [doc. # 1, p. 7].

The Due Process Clause of the Fourteenth Amendment prohibits the punitive confinement of a pretrial detainee because, by definition, the guilt of a detainee has not been adjudicated. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Courts must "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word[]" or whether the conditions are "but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538. To determine whether the condition is a punishment, and, therefore unconstitutional, courts must ascertain whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Id.* at 539. "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.*

"'There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Bell*, 441 U.S. at 539 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

---

"[T]he fact that [] detention interferes with the detainee's understandable desire to live as comfortably as possible . . . does not convert the conditions or restrictions of detention into 'punishment.'"  *Id.* at 537.  "Courts must be mindful that [inquiries into whether conditions are arbitrary, purposeless, or punitive] spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility."  *Id.* at 539.  Courts should, in certain circumstances, "defer to the informed discretion of prison administrators because the realities of running a corrections institution are complex and difficult, courts are ill equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch."  *Id.* at n.2.

Here, Plaintiff remained in administrative segregation from October 21, 2020, to November 19, 2020.  [doc. #s 1, p. 13; 8, p. 2].  He could not use a telephone to call family and friends.  [doc. #s 1, p. 13; 8, p. 2].  He also lacked stationery, an envelope to send letters to his family, a toothbrush, toothpaste, soap, and cleaning materials to clean his cell and toilet.  *Id.*  He could not shower because he lacked hygiene items and a change of clean clothes.  [doc. # 8, pp. 2-3].  He "was forced to wear soiled and dirty clothes during [his] stay."  *Id.*

Construing Plaintiff's allegations liberally and in his favor, he described greater-than-de minimis conditions.  Further, at this preliminary stage of the proceeding, the Court has no record of defendants' "governmental objective"—if any—for confining Plaintiff under these conditions for almost one month.  The Court should, therefore, retain this claim against Defendants Williams and Morgan.

## 9. Access to Court

Plaintiff claims that Warden Williams denied him access to the law library.  [doc. # 1, p.

7].  He "filled out numerous request forms requesting access to a law library[,]" but his requests were never answered.  *Id.* at 14.  He could not research how to file "in the federal courts" and could not "study for [his] criminal case and civil case . . . ."  [doc. #s 1, p. 14; 8, p. 2].  In June 2021, Warden Williams informed detainees that they had no right to use the law library because they are "appointed a lawyer through the Indigent Defenders Board."  *Id.*

Plaintiff also claims that his mail is "held longer than it should or longer than other detainees."  [doc. # 8, p. 4].  He states that he received this Court's Memorandum Order late, leaving him with only ten days to file a response by the deadline.  *Id.*

To succeed on claim that a defendant is violating a plaintiff's right to access the courts, the plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial.  *Lewis v. Casey*, 518 U.S. 343, 356 (1996).  The "injury requirement is not satisfied by just any type of frustrated legal claim."  *Id.* at 353.  Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983.  *Id.* at 353-54 (*quoting Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

Here, Plaintiff does not identify a claim, defense, or proceeding that he cannot presently prepare or file, that he could not prepare or file in the past, that he lost, or for which he could not obtain a remedy.  The Court should dismiss these claims.

## 10. Lost Mail

Plaintiff claims that he attempted to mail his personal property from the jail to his home at his expense, but although he paid for postage and was told that the property was mailed, it never arrived at its destination.  [doc. #s 1, pp. 14-15; 8, p. 4].

Plaintiff, however, does not identify a responsible defendant.  He mentions Defendant Morgan, but he only alleges that Morgan "was to look into this matter" *after* his mail failed to reach its destination.  [doc. # 1, p. 15].

Even assuming Plaintiff identified a responsible defendant, the *Parratt/Hudson*[10] doctrine forecloses his claims.  A post-deprivation tort cause of action in state law is, under the *Parratt/Hudson* doctrine, sufficient to satisfy the requirements of due process when a plaintiff alleges that he has been deprived of his property, without due process of law, by the negligent or intentional actions of a state officer that are "random and unauthorized."[11]  *Sheppard v. Louisiana Bd. of Parole*, 873 F.2d 761, 763 (5th Cir. 1989) (*quoting Hudson*, 468 U.S. at 533-35).  Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property.  *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984) (*citing* Louisiana Civil Code Article 2315 and observing that "Louisiana law affords an opportunity to redress intentional torts under the same section of the Code by which negligence is remedied."); *Fuller v. XTO Energy, Inc.*, 989 So. 2d 298, 302 (La. Ct. App. 2008) (recognizing the tort of conversion).[12]

---

[10] *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986).

[11] "The doctrine is meant to protect the state from liability for failing to provide predeprivation process in situations where it cannot anticipate the need for such process (when actions are random and unauthorized)."  *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996).

[12] *See also Suria v. Wathen*, 616 F. App'x 175 (5th Cir. 2015) (affirming dismissal of a claim, that correctional officers lost an inmate's personal property through gross negligence and dereliction of duty, on grounds that "negligent conduct is not actionable under § 1983."); *Krause v. Leonard*, 352 F. App'x 933 (5th Cir. 2009) (prisoner's claims, that police lost property that was inside his impounded automobile and allowed thieves to steal from his trailers during his time in jail, were not cognizable under Section 1983 because state law provided a meaningful post-deprivation remedy).

Here, Plaintiff does not allege that anyone deprived him of his property under an official policy, custom, or procedure; rather, he tentatively describes random and unauthorized action.

Further, and again even assuming Plaintiff identified a responsible defendant, he does not raise a claim under Louisiana law. After alleging that his mail "went missing[,]" he states only that his "1st, 4th, and 14th Amendment rights" were violated. [doc. # 8, p. 4]. That said, even assuming Plaintiff seeks relief for negligence, the ostensible claim is conclusory because he does not identify a negligent act. Rather, he surmises that his mail "went missing" and was "never received" either because he was not allowed to pack his property before mailing, because "the postage was short[,]" or because he did not witness anyone pack or seal his property. [doc. #s 1, pp. 14-15; 8, p. 4].

The Court should dismiss this claim.

## 11. Opening and Copying Plaintiff's Legal Mail

Plaintiff claims that Lieutenant Glass opened and copied his legal mail in his absence. [doc. # 1, pp. 7, 16].

Plaintiff does not state a plausible claim on which relief can be granted because "prison officials may open incoming legal mail to inspect it for contraband." *Jones v. Mail Room Staff*, 74 F. App'x 418, 419 (5th Cir. 2003) (*citing Brewer v. Wilkinson*, 3 F.3d 816, 820-21 (5th Cir. 1993)). Similarly, "prisoners do not have a constitutional right to be present when privileged, legal mail is opened and inspected." *Collins v. Foster*, 603 F. App'x 273, 275 (5th Cir. 2015) (*citing Brewer*, 3 F.3d at 825).

To the extent Plaintiff claims that Glass retained the original mailings and gave him only the copies, the allegation implicates Plaintiff's right to free speech. *See Walker v. Navarro Cty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993). However, he fails to allege that he suffered any cognizable

harm for which the Court can grant relief.  Any documents that the Court sent Plaintiff were themselves copies and did not, for example, contain original signatures.  In other words, Glass allegedly retained the original copies, and Plaintiff received copies of those copies.  *See Sandoval v. Fox*, 135 F. App'x 691, 691 (5th Cir. 2005) (affirming dismissal of a plaintiff's claim that guards improperly distributed prison mail because the plaintiff was not deprived of his mail and did not otherwise suffer any actual harm).

The Court should dismiss these claims.

## 12. Sheriff Dowies

Plaintiff claims that Sheriff Dowies did not issue him boxer shorts, socks, a t-shirt, and shower shoes when Plaintiff entered CPDC.  [doc. # 1, p. 17].  He does not, however, allege that Sheriff Dowies was present when he entered CPDC or that Dowies otherwise directly caused the withholding of these items.  In other words, he does not plausibly allege that Dowies affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between Dowies's conduct and any alleged constitutional violation. Instead, Plaintiff pleads only vicarious liability.

Further, Plaintiff does not allege that Dowies enacted a policy of withholding (or failing to issue) these items; rather, he suggests that it was Warden Williams who failed to enforce a policy "that each new intake receive" these items.  [doc. # 1, p. 17].

Next, Plaintiff claims without elaborating that Dowies  "has not provided staff with proper safety training to ensure a safe environment . . . ."  [doc. # 8, p. 4].  This claim is conclusory: Plaintiff simply invites the questions, what safety training did Dowies fail to provide, and how was Plaintiff harmed by Dowies' alleged failure?  Plaintiff also vaguely claims

that Dowies failed to enact "adequate rules or guidelines for staff or inmates to follow." *Id.* But he does not describe the rules or guidelines he claims Dowies should have enacted.

Finally, Plaintiff claims that Dowies "has not ensured the well-being of inmates or staff due to the fact of overcrowding and being understaffed." [doc. # 8, pp. 4-5]. Plaintiff lacks standing to raise claims on behalf of others. And to the extent he seeks relief for himself, his claim is conclusory. He does not, for example, allege that he suffered any harm from overcrowding or understaffing, that he will suffer imminent harm, that the overcrowding or understaffing deprived him of an identifiable human need, or that Dowies intended to punish him with overcrowding or understaffing.[13]

The Court should dismiss these claims against Sheriff Dowies in both his individual and official capacities.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that the Court **DISMISS** the following claims as frivolous and for failing to state claims on which relief may be granted:

> (1) Plaintiff Darryl Deramus's claim that defendants forced him to submit to a haircut in violation of his First Amendment right to practice his religion;

> (2) Plaintiff's claim under the RFRA;

> (3) Plaintiff's RLUIPA claims against Defendants William and Morgan in their official capacities and against all defendants in their individual capacities;

> (4) Plaintiff's retaliation claims: (A) that Warden Williams denied him access to the law library; (B) that Lieutenant Morgan forced Plaintiff to cut his hair; (C) that the administration is holding, copying, and opening his legal mail in his absence; and (D) that "legal material" is "possibly going missing[,]" that his

---

[13] *See Tweedy v. Boggs*, 983 F.2d 232 (5th Cir. 1993) (affirming the dismissal, as frivolous, of a proceeding where the detainee did "not allege that he has ever been assigned to a cell with too many prisoners" and alleged only "that the Center is 'often overcrowded' . . . ."); *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) ("Overcrowding of persons in custody is not per se unconstitutional.").

mail is "being held longer than it should or longer than other detainees," and that mail he sent to his family "went missing";

(5) Plaintiff's claims against CPDC;

(6) Plaintiff's claim that Warden Williams failed to stop Lieutenant Morgan from placing him in administrative segregation and cutting his hair;

(7) Plaintiff's access-to-court claims;

(8) Plaintiff's claim that property he mailed never arrived at its destination;

(9) Plaintiff's claim that Lieutenant Glass opened, copied, and destroyed his legal mail in his absence; and

(10) Plaintiff's claims that Sheriff Dowies: (A) did not issue him boxer shorts, socks, a t-shirt, and shower shoes when Plaintiff entered CPDC; (B) "has not provided staff with proper safety training to ensure a safe environment"; (C) failed to enact "adequate rules or guidelines for staff or inmates to follow"; and (D) "has not ensured the well-being of inmates or staff due to the fact of overcrowding and being understaffed."

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 22nd day of December, 2021.

_____
Kayla Dye McClusky
United States Magistrate Judge