UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **DARRYL DERAMUS** | **CIVIL ACTION NO. 21-2566** |
| | **SECTION P** |
| VS. | |
| | **JUDGE TERRY A. DOUGHTY** |
| **CLAIBORNE PARISH DETENTION CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Defendants Sheriff Sam Dowies, Warden Dusty Williams, and Lieutenant Bobby Morgan move for summary judgment, arguing that Plaintiff Darryl Deramus failed to exhaust his available administrative remedies before filing this proceeding.[1] [doc. # 20]. Plaintiff opposes the motion. [doc. # 27]. For reasons below, the Court should deny the motion.

**Background**

Plaintiff Darryl Deramus, a pre-trial detainee at Claiborne Parish Detention Center ("CPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately August 12, 2021, under 42 U.S.C. § 1983. Plaintiff claims (1) that Sheriff Dowies violated his rights under the Religious Land Use and Institutionalized Persons Act; (2) that Lieutenant Morgan retaliated by placing him in administrative segregation after he refused to submit to a haircut; and (3) that Defendants Williams and Morgan placed him in unconstitutional conditions of confinement. He seeks a declaratory judgment, injunctive relief, nominal and punitive damages, and any other relief to which he is entitled.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

**Law and Analysis**

A. Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[2]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all

---

[2] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

2

permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (*quoting Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[3] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

---

[3] I.e., beyond doubt.

B. <u>Exhaustion Principles</u>

Under 42 U.S.C. § 1997e(a), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle,* 534 U.S. 516, 524 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua,* 342 Fed. App'x. 933, 934 (5th Cir. Aug. 20, 2009) (unpubl.) (*citing Woodford,* 548 U.S. at 89–93). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id.*

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532 (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton,* 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). Exhaustion also applies to claims brought against defendants in their official and/or individual capacities. *See, e.g.*, *Williams v. Henagan,* 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas,* 76 Fed. App'x. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

Exhaustion is an affirmative defense; thus, the burden is on the defendant to establish that the plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers,* 596 F.3d 260,

4

266 (5th Cir. 2010). If a defendant meets this burden, a court has no discretion to excuse the plaintiff's failure. *Gonzales v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012).

C. <u>Analysis</u>

Defendants argue that that there "is no record of [Plaintiff] filing any administrative grievances at any of the three steps of the ARP at CPDC." [doc. # 20-2, p. 2]. They argue, alternatively, that, even if Plaintiff started the process, he did not complete it. [doc. # 28, p. 4]. They present the following in their "Statement of Material Facts":

> 2. The Claiborne Parish Sheriff has an Administrative Remedy Procedure ("ARP") at CPDC. [Ex. 1 (Risner Aff.) and Ex. 1-A (ARP Procedure)].
>
> 3. The ARP at CPDC consists of three steps. If the inmate does not receive a response from the appropriate official within the time frame set forth in the ARP for each step, the inmate can move on to the next step in the ARP. [Ex. 1 and 1-A].
>
> 4. Assistant Warden Steve Risner performed a diligent search of the records of DeRamus and the records of the Claiborne Parish Detention Center, but there is no record of DeRamus filing any administrative grievances pursuant to the ARP at any of the three steps in the ARP. [Ex. 1 at ¶ 5].

[doc. # 20-3, p. 1].

i. <u>The Existence of an ARP at CPDC</u>

Plaintiff does not genuinely dispute that CPDC has an ARP. Defendants attach a copy of the ARP to their motion, and, as above, Assistant Warden Risner avers that CPDC maintains an ARP which was in effect at all relevant times. [doc. # 20-1, p. 3].

While Plaintiff initially stated in his pleading that there was not a prison grievance procedure at CPDC, he subsequently stated that he *did* initiate the process by filing an "ARP grievance." [doc. #s 1, p. 2; 27, p. 2]. It seems that Plaintiff is essentially arguing that there is no *functioning* grievance procedure. Moreover, he states in his response to the instant motion that he "did in fact try to resolve the issue and exhausted his administrative remedies." [doc. #

5

27, p. 2]. Plaintiff does not show with "*significant* probative evidence" that a genuine dispute of material fact exists as to whether there is a grievance procedure.

    ii. Initiating the ARP

Plaintiff does genuinely dispute Defendants' contention that he failed to initiate the grievance process by filing a grievance under the first step of the policy. In his response to the instant motion, Plaintiff "swears under oath" that he filed a grievance under Step One of the ARP on November 12, 2020. [doc. # 27, pp. 1-2]. While Plaintiff does not present this statement in an affidavit—and to the extent his statement is not "substantially" in the form prescribed under 28 U.S.C. § 1746 because he does not declare or certify that his statement is true under penalty of perjury—he can always testify under oath to what he alleges.[4,5]

---

[4] *See Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019) (quotations omitted) ("New Rule 56(c), added in 2010, permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial. Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . ,the material may be presented in a form that would not, in itself, be admissible at trial."); *Lozano v. Davis*, 774 F. App'x 263, 264 (5th Cir. 2019) (reasoning that considering whether a plaintiff's unsworn assertions "could have been presented in an admissible form . . . is particularly relevant where a *pro se* plaintiff's allegations form his entire response in opposition to summary judgment."); *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) ("The district court dismissed Captain Jamison's report solely because it was not sworn without considering Lee's argument that Captain Jamison would testify to those opinions at trial and without determining whether such opinions, as testified to at trial, would be admissible."); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record.").

[5] In his initial form complaint, Plaintiff marked "No" when asked if he filed an administrative grievance. [doc. # 1, p. 2]. However, his signature at the bottom of the form pleading is not preceded by any declaration or certification indicating that his mark amounts to sworn testimony. In a hand-written attachment to the form pleading, Plaintiff does "swear the foregoing is true and correct to the best of [his] knowledge" under 28 U.S.C. § 1746. *Id.* at 20. However, he does not appear to be swearing to the contents of the form pleading, considering the form pleading appears to be a separate document supported by a separate signature.

iii. <u>Proceeding to Step Two of the ARP</u>

There is no genuine dispute that Plaintiff failed to proceed beyond the first step of the policy.

iv. <u>The Availability of Steps Two and Three</u>

There are two genuine disputes concerning whether the second and third steps of the ARP were available for Plaintiff's use. Plaintiff maintains that he never received a response to his initial grievance. [doc. # 27, p. 2]. Defendants argue:

> [I]f DeRamus' first-step ARP grievance was filed on November 12, 2020, and there was no response to that first-step grievance within the 15 days allowed under the ARP procedure, then DeRamus was required to file at the second step of the ARP procedure within 5 days of the date on which the response to his first-step grievance was due. [See Doc. 20-1 at p. 3]. As stated in Defendants' MSJ, the ARP procedure states that "If an extension has not been granted and the offender has not received a response in the set time frame, the offender can move on to the next step in the ARP." [Doc. 20-1 at p. 3].

[doc. # 28, p. 4].

a. <u>Whether Plaintiff had an Opportunity to Discover the Procedures</u>

First, Plaintiff essentially maintains that the ARP was "'unavailable'" because despite his best efforts he could not obtain the rules for using the ARP. He states that "there are no . . . rules regulation [sic] on proper filing procedures." [doc. # 1, p. 9]. He also states that he "asked many times for Administrative Remedy Procedure (ARP) [sic] and was refused many times." *Id.* at 13. He states that he "was never given any rules and regulations or policies . . . ." *Id.* at 14. Finally, he attaches an "Offender Request Form," in which he asked for a "copy of the rules and regulations that apply" to the detention center. [doc. # 1-2, p. 6]. He did not receive an answer. *Id.*

An administrative remedy may be unavailable if (1) despite what regulations or materials may promise, prison officials are "unable or consistently unwilling to provide any relief to

7

aggrieved inmates," (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use" by an ordinary prisoner, or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016).

"[C]ourts may *not* deem grievance procedures unavailable merely because an inmate was ignorant of them, so long as the inmate had a fair, reasonable opportunity to apprise himself of the procedures." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015). In *Davis*, for instance, the court found that the plaintiff's ignorance of the grievance procedures, without more, was no basis to deem them unavailable, highlighting that "undisputed evidence shows that the jail's grievance procedures are published in an inmate handbook, which is in the record, and explained on jail television, and Davis does not contend that any circumstances precluded him from accessing either source." *Id.*

That said, the Fifth Circuit has "long recognized the importance of ensuring that inmates have avenues for discovering the procedural rules governing their grievances." *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). In *Brantner v. Freestone Cnty. Sheriffs Off.*, 776 F. App'x 829, 834 (5th Cir. 2019), for example, a prisoner "identified a genuine issue of material fact" by presenting "evidence that he never received the Inmate Rules Handbook." "[H]e requested grievance forms but never received them or any further instruction about deadlines or content necessary to file a grievance." *Id.* The Fifth Circuit concluded: "This evidence, if believed, satisfies the unavailability exception to exhaustion. . . . Brantner was 'thwart[ed]' from using prison processes because he was supplied with documents that only partially explained the prison processes." *Id.*; *see Huskey v. Jones*, 45 F.4th 827, 833 (5th Cir. 2022) ("Huskey has presented evidence that he . . . was given documents that only partially explained prison processes.

8

Viewed in the light most favorable to Huskey, this evidence satisfies the unavailability exception under *Ross* because the 'administrative scheme [was] so opaque that it bec[ame], practically speaking, incapable of use' by an 'ordinary prisoner.'").[6]

Here, Plaintiff genuinely disputes whether the second and third steps of the ARP were "'available,'" considering (1) he did not receive the rules or the ARP after repeated requests and (2) Defendants do not present any competent summary judgment evidence demonstrating that they presented the rules to Plaintiff or that Plaintiff otherwise had a fair, reasonable opportunity to apprise himself of the procedures. Plaintiff does suggest that he was aware of some procedure at CPDC, as he allegedly filed a Step One grievance. However, there is a genuine dispute concerning whether he had a reasonable opportunity to apprise himself of the rules for proceeding to the next steps or navigating the entire ARP to conclusion after failing to receive a response to his initial grievance. That he filed a Step One grievance, in other words, does not establish that defendants presented the ARP (or the all the rules for utilizing the ARP) to him.

### b. Whether Steps Two and Three Were 'Capable of Use'

The second genuine dispute surrounding the availability of administrative remedies is whether the ARP allows a prisoner to proceed to Steps Two and Three when a prisoner does not

---

[6] *Cf. Leggett v. Lafayette*, 608 F. App'x 187, 190-91 (5th Cir. 2015) ("Unlike in *Dillon*, however, the key portions of the inmate handbook are contained in the record and the uncontested evidence indicates that copies of the handbook were readily available to inmates in the confinement areas of the jail (to which Leggett had access). Furthermore, there is no suggestion that anyone ever misled Leggett about the grievance process or attempted to dissuade him from making use of it. The summary-judgment evidence establishes that Leggett had 'avenues for discovering the procedural rules governing [his] grievances.' Thus, even if Leggett was subjectively unaware of the procedures, the record sets out the substance of those procedures and indicates that the information was available to Leggett."); *Manemann v. Garrett*, 484 F. App'x 857, 858 (5th Cir. 2012) ("Nothing in the record before us suggests that Manemann ever asked for information about filing a grievance and was refused such information or was given incorrect information. . . . Thus, the defendants met their burden of showing that a grievance policy existed and that it was accessible to Manemann.").

receive a response to his Step One grievance. Stated otherwise, there is a genuine dispute concerning whether the policy is 'capable of use.'

In *Wilson v. Epps*, 776 F.3d 296, 302 (5th Cir. 2015), the court opined:

> Section 1997e's exhaustion requirement is satisfied only if the prisoner "pursue[s] the grievance remedy to conclusion." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This requirement does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process. Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process. Thus, it is only if the prison fails to respond at the last step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance.

*Wilson*, 776 F.3d at 301. The policy in *Wilson* stated, "'Expiration of response time limits without receipt of a written response shall entitle the offender to move on to the next step in the process.'" *Id.* at 300. The Fifth Circuit later clarified:

> In *Wilson v. Epps,* 776 F.3d 296 (5th Cir. 2015), the plaintiff contended that the prison's failure to respond to his initial grievance excused him from further steps in the process. *Id.* at 301. We explained that "[t]his argument deserves close[ ] scrutiny, because, under some circumstances, a prison's failure to respond to a prisoner's grievance can result in the prisoner's administrative remedies being deemed exhausted." *Id.* The relevant circumstances, we explained, are the requirements of the prison's grievance procedures. The grievance procedures at issue in *Wilson* stated that if a prisoner does not receive a response to his grievance, the prisoner is "entitled"—and therefore, to exhaust, *must*—"move on to the next step in the process." *Id.* (quoting grievance procedures). By contrast, in *Underwood v. Wilson,* 151 F.3d 292 (5th Cir. 1998), *overruled on other grounds as explained in Gonzalez v. Seal,* 702 F.3d 785 (5th Cir. 2012), we held that when a prison's procedures prescribe deadlines by which the authorities must respond to grievances and do not set out any additional steps that prisoners must take upon that time elapsing, then prisoners in such circumstances have exhausted the available procedures. *Id.* at 295.

*Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015). The Fifth Circuit applied that reasoning in *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016), opining:

> The grievance policies of the Dallas County Jail indicate that *Wilson* does not apply on the facts before us. The jail's Grievance Plan provides that "[i]f an inmate is not satisfied with a Board's *findings*, the inmate may appeal to the

10

>Detention Service Manager, Quality Assurance Unit." The Plan further indicates that the "Board's *findings*" are delivered to an inmate in a "written reply ... within 60 days of the initial grievance receipt." An interim response does not contain "findings" that a prisoner may appeal. Nor does any other provision in the plan permit an inmate to appeal the lack of a timely interim reply. Here, unlike in *Wilson*, the policies afforded Cowart no "next step" once the response period for an interim reply had lapsed, but pending his receipt of a written answer with findings.

In this proceeding, the portion of the policy that defendants present does contain a statement like the one in *Wilson* permitting a prisoner to proceed to the next step if the prisoner does not receive a response in the requisite time. It states: "If . . . the offender has not received a response in the set time frame, the offender can move on to the next step in the ARP." [doc. # 20-1, p. 3].

However, the ARP did not afford Plaintiff a "'next step.'" To explain, the ARP states that an offender may request review under Step Two if the offender is "not satisfied with the response at Step One . . . ." *Id.* If an offender receives no response, then *a fortiori* he lacks a response with which to be unsatisfied. But *more importantly*, the ARP states that an offender may proceed to Step Two by "signing the bottom of the Response to Grievance Form (ARP-2)" and giving the ARP-2 "to a Correctional Officer within five (5) days of the offender's receipt from the Step One Respondent." *Id.* If an offender does not receive a response to his Step One grievance, it is not possible, under the terms of the ARP, to proceed to Step Two because there is no response to sign. Moreover, an offender could not, for instance, attempt to proceed to Step Two by filing a document other than a response to his grievance because the policy suggests that an offender must wait until he receives a response before proceeding to the next step. *See Jones v. Blackman*, 2021 WL 1805644, at *1 (W.D. La. Apr. 20, 2021), report and recommendation adopted, 2021 WL 1792140 (W.D. La. May 5, 2021); *Stewart v. Smith*, 2018 WL 3966280, at *5 (W.D. Tex. Aug. 17, 2018) ("Without a decision on a timely-filed Step 1 grievance, there was no

11

'next step' to which Stewart could advance.").[7]  Without a response, the remaining steps of the policy are not "capable of use." *See generally Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'").

Defendants essentially attempt to graft an additional requirement into the existing policy: that offenders must proceed to the next step if they do not receive a Step One response, using a document other than a Step One response. *See Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) ("Erwin reads an additional requirement into the policies—one requiring prisoners to object in some way if they do not receive a timely interim reply."). However, "Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015); *see Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) ("Nothing in the [PLRA] prescribes appropriate grievance procedures or enables judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems" (footnote omitted)).

v. <u>Judicial Admission</u>

Finally, Defendants contend that by presenting contradictory statements, Plaintiff judicially admitted that he failed to exhaust his administrative remedies. [doc. # 20-2, p. 6]. Defendants rely in part on the mark Plaintiff placed in the form pleading, where he indicated that

---

[7] *See also Boyd v. Corrections Corp. of Am.*, 380 F.3d 989, 996-97 (6th Cir. 2004) (prison officials' failure to respond to prison grievances rendered administrative remedies unavailable where prison procedure required prisoners to receive a response from the grievance officer before appealing to the warden); *Henderson v. Moore*, 2008 WL 2704674, at *5 (S.D. Tex. Jul. 2, 2008) (explaining that "even if it was necessary for plaintiff to file a Step 2 grievance, the uncontested facts establish that he could not have done so timely because he did not receive a copy of the Step 1 response" and holding that "[u]nder the particular circumstances of this case, the fact that plaintiff *never* received a copy of the Step 1 response excused any failure to exhaust.") (emphasis in original)).

12

he did not file an administrative grievance. [doc. # 1, p. 2]. As above, however, Plaintiff genuinely disputes Defendants' contention that he failed to initiate the grievance process by filing a grievance under the first step of the policy. Defendants also rely on Plaintiff's criticism of "the alleged lack of clarity in how to file an ARP grievance under the ARP." [doc. # 20-2, p. 6]. But as above, Defendants do not present any competent summary judgment evidence demonstrating that they presented the rules to Plaintiff or that Plaintiff had a fair, reasonable opportunity to apprise himself of the procedures.

"A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Mays v. Dir., Off. of Workers' Comp. Programs*, 938 F.3d 637, 647 (5th Cir. 2019). "A statement made during the course of a lawsuit—even a statement made in a pleading filed with the court—should be considered a judicial admission only 'if it was made intentionally as a waiver, releasing the opponent from proof of fact.'" *Id.* (quoting *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001)). "An *evidentiary* admission, by contrast, 'is merely a statement of assertion or concession made for some independent purpose, and it may be controverted or explained by the party who made it.'" *Id.*; *see Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) ("To qualify as a judicial admission, [a] statement must be," among other things, "deliberate, clear, and unequivocal . . . .").

Here, at best, Plaintiff presents potential 'evidentiary admissions[,]' but he did not judicially admit that he failed to exhaust available administrative remedies before filing this proceeding. Contradictory statements are not unequivocal statements. Rather, Plaintiff presented statements and then controverted or explained his statements in his response to defendants' motion.

13

Resolving all ambiguities and drawing all permissible inferences in favor of Plaintiff, the non-moving party, there are genuine disputes concerning whether Plaintiff exhausted all available administrative remedies before filing this proceeding.

## Conclusion

For reasons above, **IT IS RECOMMENDED** that Defendants' motion for summary judgment, be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, Monroe, Louisiana, this 21st day of November, 2022.

_____
Kayla Dye McClusky
United States Magistrate Judge